Case 3:20-cv-00022   Document 16   Filed on 11/09/20 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
November 09, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT CHARLES ADEN, III, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-CV-00022 |
| | § | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | § § § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Robert Charles Aden, III ("Aden") seeks judicial review of an administrative decision denying his application for disability insurance benefits under Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Before me are competing motions for summary judgment filed by Aden and Defendant Andrew Saul, the Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 11, 14.

Having considered the motions, responsive briefing, record, and applicable law, I recommend that Aden's Motion for Summary Judgment (Dkt. 11) be **GRANTED** and the Commissioner's Motion for Summary Judgment (Dkt. 14) be **DENIED.**

### BACKGROUND

In June 2015, Aden filed an application for disability insurance benefits under Title XVI of the Act, alleging disability as of July 2, 1996. Aden's application was initially denied and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Aden was not disabled. Aden filed an appeal with the Appeals Council. The Appeals Council

denied review, making the ALJ's decision final and ripe for judicial review. This appeal followed.

## APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (internal quotation marks and citations omitted). The result is a judicial review limited to the reasons relied on as stated in the ALJ's decision where *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the Commissioner considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

The ALJ found at Step 1 that Aden had not engaged in substantial gainful activity since June 2, 2015.

The ALJ found at Step 2 that Aden had the following severe impairments: "status-post pulmonary valve replacement for Tetralogy of Fallot; fibromyalgia; hypothyroidism; valvular heart disease; seizure disorder; arthritis; headaches; obesity; and adjustment disorder with mixed anxiety and depressed mood." Dkt. 8-3 at 14.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ assessed Aden's RFC, as follows:

3

>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). However, the claimant can occasionally stop, bend, balance, kneel, crouch, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. The claimant must avoid even moderate exposure to pulmonary irritants, such as dusts, fumes, gases, odors, and poor ventilation. He must avoid concentrated exposure to extreme heat, cold, and humidity. The claimant requires a sit/stand at will option, and he cannot do any repetitive bending. He cannot work around unprotected heights, dangerous moving machinery, open flames, or large bodies of water. He can understand, remember, and apply/carry out simple instructions, perform simple and repetitive tasks, and maintain concentration, persistence, and pace for 2-hour periods with customary breaks during an 8-hour workday. He cannot perform any fast-paced production work. Additionally, he can occasionally interact with supervisors, and have superficial/incidental contact with coworkers and the general public.

*Id.* at 20.

At Step 4, the ALJ found Aden had no past relevant work.

At Step 5, with the assistance of a vocational expert, the ALJ concluded that "considering [Aden's] age, education, work experience, and residual functional capacity, [he] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 35. Accordingly, the ALJ determined that Aden was not disabled and thus not entitled to benefits.

## DISCUSSION

Aden contends that the ALJ erred in assessing his disability claim in a few respects. First, he argues that the ALJ's Step 3 analysis is not supported by substantial evidence because the evidence indicates that his seizures meet the epilepsy listing found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02(A) (hereinafter, "Listing 11.02(A)"), and the ALJ provided only a conclusory analysis. Next Aden argues that the ALJ failed to incorporate all of his recognized

4

functional limitations into the RFC determination. Last, Aden argues that the ALJ's Step 5 determination did not adequately establish the existence of work that he could still perform. Because I ultimately find that Aden's first argument warrants remand, I do not reach his remaining arguments.

At Step 3, "the ALJ determines whether the claimant has an impairment that meets or equals those listed in Appendix 1 of the regulations. Appendix 1 provides, in relevant part, that a finding of certain affective disorders constitutes a disability." *Heck v. Colvin*, 674 F. App'x 411, 414 (5th Cir. 2017) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04). The listings found in the regulations describe levels of impairment related to each of the major body systems. *See* 20 C.F.R. §§ 404.1525, 416.925. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis.

Listings criteria are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). A mere diagnosis of a condition will not suffice. The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. §§ 404.1525(d), 416.925(d). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 listing determination. *See Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.").

Aden contends that he meets the requirement of Listing 11.02(A) for generalized tonic-clonic seizures, which must be "documented by a detailed description of a typical seizure and characterized by" the requirements of one of four subsections. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. Listing 11.02(A) provides: "Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)." The regulations specifically require that a claimant submit "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(H)(2). Further, the regulations describe a generalized tonic-clonic seizure as follows:

> Generalized tonic-clonic seizures are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(H)(1)(a).

To satisfy his burden, Aden submitted various medical records, along with the affidavit of his mother/in home caregiver, Patricia Ann Aden ("Ms. Aden"). Relevant here, Aden suffered a seizure in June 2017, which necessitated an emergency room visit.[1] The medical record generated that day contains the following description of the seizure:

---

[1] Neither party mentions that at his July 2017 follow-up appointment, Aden was diagnosed with "Epilepsy." *See* Dkt. 8-10 at 62.

> 15:45 Character of seizure(s): Loss of consciousness: the patient experienced loss of consciousness, Motor activity: generalized, shaking all over, Incontinence: none. Seizure onset: just prior to arrival. Context: occurred at home, occurred while the patient was sitting. Contributing factors: unknown. Seizure Hx: the patient has no previous seizure history. Associated injury: The patient did not suffer any apparent associated injury. Current symptoms: Currently, the patient is not experiencing any symptoms, the patient feels back to baseline.

Dkt. 8-10 at 46. This description is also consistent with Ms. Aden's affidavit, which describes Aden's seizures as follows:

> 10. I have observed seizure episodes. He has such episodes approximately twice per month. In July 2017 he had a seizure in which he stopped breathing, his skin turned blue, and he was transported to a hospital by ambulance. These seizure periods last between ten minutes and 45 minutes. During these periods he has sometimes lost consciousness; at other times he is in a fog and is unable to function-he doesn't remember my name; cannot hear anything, etc. When he gets up from one of these episodes he doesn't know what he is doing; he has hit things, knocked things over, etc. After a seizure, he cannot focus or concentrate. He has done strange things because he is in a fog. Among these activities are the following:
>
>    A. He put his cellphone into the microwave;
>    B. He put his socks in the refrigerator;
>    C. He has turned on the shower and left the room, unaware that the water was running;
>
> When he finally recovers, he has no recollection of these incidents.

Dkt. 8-8 at 66–67. During the appeal process before the Appeals Council, Ms. Aden also submitted a seizure log documenting her son's many seizures between June 2017 and February 2019. *See id.* at 74–76. The seizure log documents seizure activity occurring at a frequency easily exceeding the required "at least once a month for at least 3 consecutive months." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02(A). In my view, this evidence seems to satisfy Listing 11.02(A).

7

However, the ALJ's Step 3 analysis fails to mention any of these records.[2]  Indeed, the ALJ merely restated the regulations before offering a one sentence analysis: "The claimant does not meet or medically equal listing 11.02, as there is no documented evidence that satisfies A, B, C, or D outlined above."  Dkt. 8-3 at 16.  I find this analysis conclusory.[3]

Aden has provided evidence describing his seizures and his mother's seizure log documents multiple seizures over several months.  The evidence suggests the seizures were of a kind that would arguably satisfy Listing 11.02(A).  As for frequency, Ms. Aden's seizure log seems to satisfy the frequency requirement.  Thus, there is significant evidence, meriting assessment and discussion, regarding whether Aden meets Listing 11.02(A).

"Considering this evidence and the lack of a more detailed discussion of the listing claim in the ALJ's decision, [I] cannot find that the decision is supported by substantial evidence."  *K.M.L. v. Comm'r of Soc. Sec.*, No. 18-CV-1047, 2019 WL 2339449, at *5 (W.D. La. May 31, 2019).  Thus, I find that the correct course is to reverse the Commissioner's decision and remand for further proceedings.

## CONCLUSION

For the reasons stated above, I recommend that Aden's Motion for Summary Judgment (Dkt. 11) be **GRANTED**; the Commissioner's Motion for Summary Judgment (Dkt. 14) be

---

[2] It is understandable that the ALJ did not discuss Ms. Aden's seizure log because it was first provided during the appellate process.

[3] The ALJ only discusses Ms. Aden's affidavit in the context of the RFC determination.  I do not find that discussion applicable to the ALJ's Step 3 determination.  The legal principles surrounding the consideration of evidence for the purpose of assessing a claimant's RFC are markedly different from Step 3's legal principles, generally, and Listing 11.02(A), specifically.

**DENIED**; and the decision of the ALJ be **REVERSED** and **REMANDED** for reconsideration in accordance with this opinion and applicable law.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 9th day of November 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE